IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTATE OF ERIC BATTLE, Freddie | : | CIVIL ACTION |
| Battle, Administratrix and individually | : | |
| v. | : | |
| | : | |
| PRISON HEALTH SERVICES, INC., et al. | : | NO.  07-4435 |

## MEMORANDUM

**Padova, J.**                                                                                                  **May 13, 2008**

Plaintiff Freddie Battle, on her own behalf and as Administratrix of the Estate of Eric Battle, has brought this lawsuit against Prison Health Services, Inc. and MHM Correctional Services, Inc. asserting federal and state constitutional violations, negligence, breach of contract, wrongful death, a survivorship action, and conspiracy stemming from the death of her son, Eric Battle.  Presently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Defendants' Motion is granted.

## I.      BACKGROUND

A.      <u>Procedural History</u>

Plaintiff commenced this action on July 30, 2007, by filing a writ of summons with the Court of Common Pleas of Philadelphia County.  Defendant Prison Health Services, Inc. ("PHS") removed the action to this Court based on federal question jurisdiction, and filed a motion to dismiss arguing, <u>inter alia</u>, that Plaintiff's federal claims were barred by the statute of limitations.  Plaintiff subsequently filed an Amended Complaint, which added MHM Correctional Services, Inc. ("MHM") as a defendant and mooted PHS's original motion to dismiss.  Thereafter, Defendants PHS and MHM jointly filed the instant Motion to Dismiss.

B.    <u>Factual Allegations</u>

The Amended Complaint alleges the following.  Eric Battle was a 37 year-old man, who, at the time of his death, was incarcerated at State Correctional Institute at Greene, in Wayne County, Pennsylvania ("SCI Greene").  (Am. Compl. ¶ 1.)  He suffered from severe diabetes and mental health issues.  (<u>Id.</u>)  Eric's mother, Freddie Battle, is the Administratrix of his Estate.  (<u>Id.</u> ¶ 3.)  Defendant PHS provides medical services pursuant to a contract at multiple facilities operated by the Pennsylvania Department of Corrections (the "DOC"), including SCI Greene.  (<u>Id.</u> ¶ 6.)  Defendant MHM provides mental health services to inmates at multiple DOC-operated facilities, including SCI Greene.  (<u>Id.</u> ¶¶ 7, 10.)

On November 1, 2004, after refusing insulin injections, Eric was transferred from SCI Greene to the emergency room at the Green County Memorial Hospital for treatment to control his glucose levels and for dehydration.  (<u>Id.</u> ¶ 24.)  On November 29, 2004, after repeatedly refusing medication, he was transferred to State Correctional Institute at Cresson, in Cambria County, Pennsylvania ("SCI Cresson") for inpatient treatment pursuant to a Pennsylvania statute that permits the involuntary commitment of a patient who is severely mentally disabled.  (<u>Id.</u> ¶ 25.)  On December 13, 2004, a court in Cambria County issued an order permitting the administration of medical treatment, including forced insulin injections in order to preserve Eric's health and life.  (<u>Id.</u> ¶ 26.)  Eric was transferred from SCI Cresson on January 6, 2005, back to SCI Greene.  (<u>Id.</u> ¶ 27.)  SCI Cresson forwarded a copy of Eric's records to SCI Greene, including a copy of the Cambria County court order.  (<u>Id.</u>)  By January 28, 2005, medical staff at SCI Greene acknowledged the need to obtain a similar order from a court in Wayne County so that it could forcibly administer medical treatment to Eric, as had been done at SCI Cresson.  (<u>Id.</u> ¶ 28.)  However, no court order was ever obtained for

2

use at SCI Greene.  (Id. ¶ 29.)  In the months following his return to SCI Greene, Eric continued to refuse medical treatment.  (Id.)  During this time, PHS and MHM knew that Eric's refusal of medical treatment threatened his health and life, but they took no action to alleviate this threat.  (Id.)

On April 23, 2005, a visitor reported that he had observed Eric naked, wrapped in a blanket, and lying on a concrete floor.  (Id. ¶ 13.)  The visitor also reported that Eric's face was puffy, that his eyes were swollen almost shut, that his legs were swollen and discolored, and that he had difficulty standing and walking.  (Id. ¶ 14.)  On May 2, 2005, Freddie visited the prison and saw Eric.  (Id. ¶ 15.)  Although she observed that her son's physical condition had deteriorated, she was told that he was receiving medical care.  (Id.)

During the night of June 4-5, 2005, Eric died.  (Id. ¶ 11.)  Prior to Eric's death, PHS and MHM knew of his mental illness and diabetes but failed to regularly treat these conditions.  (Id. ¶ 12.)  During the five days leading up to his death, Eric received no insulin treatment for his life-threatening diabetes, and PHS and MHM took no emergency steps to care for him.  (Id. ¶ 31.)  Additionally, during the time leading up to his death, Eric was placed on a restricted diet, as a form of punishment.  (Id. ¶ 33.)  A restricted diet is not appropriate for a person suffering from a diabetic condition like Eric's.  (Id.)  At the time of his death, Eric's mental condition was such that he was incapable of knowing the nature and/or cause of his situation.  (Id. ¶ 35.)

On December 3, 2005, Freddie requested an autopsy report from the Greene County coroner.  (Id. ¶ 18.)  She received the report on December 13, 2005, and it listed the cause of death as uncontrolled diabetes mellitus with apparent hyperglycemia, and described the manner of death as natural.  (Id.)  The coroner declined Freddie's request for an inquest.  (Id.)  On December 20, 2005, Freddie requested that the DOC provide her with Eric's medical records.  (Id. ¶ 19.)  The DOC

3

responded that Eric's records would not be produced until Freddie, as representative of Eric's estate, presented Letters Testamentary or Letters of Administration. (Id.) Freddie attempted to comply with the DOC's requirements by opening an estate with the Register of Wills in Philadelphia, Pennsylvania; however, she was informed that she must open the estate in Greene County, Pennsylvania, where her son had died. (Id. ¶ 20.) Freddie completed the requirements for obtaining Letters of Administration from the Register of Wills of Greene County on June 30, 2006, when the last of three notices of the estate was published in the Greene County Messenger. (Id. ¶ 21.) On August 28, 2007, Freddie learned that she was required to pay $841.50 before Eric's medical records would be sent to her. (Id. ¶ 22.) She finally received Eric's medical records on September 7, 2007. (Id.)[1]

Eric's medical records reveal that he suffered from organic brain damage, was delusional, and did not have the capacity to make decisions concerning his own medical treatment. (Id. ¶ 23.) In his confusion, Eric had repeatedly refused medical treatment. (Id.) The Amended Complaint alleges that PHS and MHM did not reveal the true cause of Eric's death, and that the delay in providing medical records and other information contributed to the virtual concealment of the cause of his death. (Id. ¶ 36.)

There have been a number of other lawsuits, some of which have resulted in settlement agreements, filed against PHS involving deficient treatment of prison inmates with diabetes. (Id. ¶¶ 37-45.) Consequently, the Amended Complaint asserts that Defendants' failure to notify Freddie

---

[1] The Amended Complaint does not contain any allegations regarding what transpired between June 30, 2006, the date Freddie completed the requirements for obtaining Letters of Administration, and August 28, 2007, the date Freddie learned that she needed to pay $841.50 before Eric's medical records would be sent to her.

that Eric died from lack of medical treatment for his diabetes, complicated by his mental health issues, constituted, at the very least, an unintentional deception.  (Id. ¶ 46.)

The Amended Complaint includes the following claims against PHS and MHM: federal constitutional claims, namely claims pursuant to 42 U.S.C. §§ 1983, 1985(3), 1986 (Count 1); state constitutional claims (Count 2); negligence (Count 3); breach of contract (Count 4); wrongful death and a survival action (Count 5); and conspiracy (Count 6).

## II.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, No. 06-2869, 2008 U.S. App. LEXIS 2513, *17 (3d Cir. Feb. 5, 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002); Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007)).  "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level."  Phillips, 2008 U.S. App. LEXIS 2513, * 20 (internal quotations omitted) (citing Twombly, 127 S. Ct. at 1965).  It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1965.  If a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, regardless of whether a plaintiff has sought leave to amend, unless an amendment would be inequitable or futile.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)).

**III.     DISCUSSION**

Count 1 of the Amended Complaint asserts claims by Freddie as Administratrix of Eric's Estate and on her own behalf against PHS and MHM for deprivation of rights, privileges, and immunities under the laws and Constitution of the United States in violation of 42 U.S.C. §§ 1983, 1985(3), and 1986.  In their Motion to Dismiss, Defendants assert, <u>inter alia</u>, that the two-year statute of limitations bars the claims brought pursuant to sections 1983 and 1985(3), and that the one-year statute of limitations bars the claim brought pursuant to section 1986.  Defendants further contend that the discovery rule does not toll the statute of limitations in this case.

In response, Freddie argues that the 1983 and 1985(3) claims are not barred by the statute of limitations.  Relying on the discovery rule, Freddie contends that the statute of limitations did not begin to run at the time of Eric's death because she could not have ascertained that Defendants' failure to treat Eric's diabetes caused his death until she received his prison medical records on September 7, 2007.  While she acknowledges that she received the coroner's report before that time, she contends that the coroner provided a "definitive negative diagnosis," i.e., that Eric's death was from natural causes, which quelled her suspicions that she and/or Eric may have suffered a particular injury.  Moreover, she contends that even if the statute of limitations began to run with receipt of the coroner's report, she initiated this action on July 30, 2007, well within two years of her December 13, 2005 receipt of that report.   Finally, she contends that the doctrine of fraudulent concealment tolls the statute of limitations in this case, not only for the claims brought pursuant to sections 1983 and 1985(3), but also for the claim brought pursuant to section 1986, because Defendants did not reveal the true cause of Eric's death and there was a delay in providing medical records and other information.

6

Because sections 1983 and 1985 do not contain a specific provision regarding the time within which an action pursuant to these sections may be brought, federal courts apply the statue of limitations governing suits for personal injury in the state in which the action arises.  City of Rancho Palos Verdes v. Abrams, 544 U.S. 113,  124 (2005); Wilson v. Garcia, 471 U.S. 261, 275 (1985); see also, Henig v. Odorioso, 385 F.2d 491 (3d Cir. 1967).  Courts are also obliged to incorporate any relevant state tolling rules, so long as the result is not inconsistent with federal law or policy.  Hardin v. Straub, 490 U.S. 536, 538 (1989).  In Pennsylvania, the limitations period for a personal injury claim is two years.  See 42 Pa. Cons. Stat. Ann. § 5524(2).  Additionally, when the injury is death, Pennsylvania law does not permit the application of the discovery rule to extend the two-year limitations period.  Pastierik v. Duquesne Light Co., 526 A.2d 323 (Pa. 1987).  Consequently, after incorporating the relevant state tolling rules, the statute of limitations for the 1983 and 1985(3) claims in this action is two years.

Unlike sections 1983 and 1985(3), section 1986 contains its own statute of limitations provision, which provides that "no action under the provision of this section shall be sustained which is not commenced within one year after the cause of action has accrued."  42 U.S.C. § 1986.

Having determined the length of the statute of limitations with respect to Plaintiff's federal claims, we now examine when these claims accrued.  Even though Pennsylvania law controls the applicable statute of limitations, federal law determines when a cause of action accrues.  Deary v. Three Un-Named Police Officers, 746 F.2d 185, 197 n.16 (3d Cir. 1984); Elliott Reihner Siedzikowski & Egan, P.C. v. Pennsylvania Employees Benefit Trust Fund, 161 F. Supp. 2d 413, 420 (E.D. Pa. 2001).  Under federal law, a claim accrues on the date the plaintiff knew or had reason to know of the injury which is the basis for his action.  Genty v. Resolution Trust Corp., 937 F.2d

7

899, 919 (3d Cir. 1991). The United States Court of Appeals for the Third Circuit has further stated that "a claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994) (citations omitted). In Oshiver, the Third Circuit addressed whether the statutory period begins to run when the plaintiff learns that she has suffered an actual injury (i.e., when she was discharged from her employment), or whether it begins to run when she learns that she has suffered a legal injury (i.e., when she learns that she was discharged for a discriminatory reason). Id. at 1386. The Third Circuit concluded that it was awareness of the actual injury that determines when a claim accrues. Id.

Applying this reasoning to the instant action, the federal cause of action in this case accrued at the time of Eric's death. At that time, Freddie knew or should have known of the actual injury, namely that Eric died while under the Defendants' care. It is irrelevant that she may not have known at that time that Eric's death constituted a legal wrong. Id. (citing Bohus v. Beloff, 950 F.2d 919, 924-25 (3d Cir. 1991) (stating that in order for a claim to accrue, "the plaintiff need not know the exact medical cause of the injury; that the injury is due to another's negligent conduct; or that he [or she] has a cause of action.") (internal citations omitted)). Accordingly, the date on which the coroner provided his report and the fact that the report listed the cause of death as "natural" are immaterial to determining when the cause of action accrued. Because the federal claims in this action accrued at the time of Eric's death on the night of June 4-5, 2005 and Freddie did not initiate this action until July 30, 2007, the federal claims in this action brought pursuant to sections 1983, 1985(3) and 1986 are not timely and are barred unless the statute of limitations is equitably tolled.

Equitable tolling functions to stop the statute of limitations from running when a claim's date

of accrual has already passed.  Oshiver, 38 F.3d at 1387.  The Third Circuit has provided a list of three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action (i.e., fraudulent concealment); (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.  Id.; see also Forbes v. Eagleson, 228 F.3d 471, 486-87 (3d Cir. 2000).  Plaintiff asserts that the doctrine of fraudulent concealment equitably tolls the statute of limitations in this case.  She asserts that Defendants did not reveal the true cause of Eric's death, and that the delay in providing medical records and other information contributed to the concealment of his cause of death.  She further asserts that she could not have been certain as to the true cause of Eric's death until she received his prison medical records.

Under the doctrine of fraudulent concealment, "where the plaintiff has been actively misled . . . the equitable tolling doctrine provides the plaintiff with the full statutory limitations period, starting from the date the facts supporting the plaintiff's cause of action either become apparent to the plaintiff or should have become apparent to a person in the plaintiff's position with a reasonably prudent regard for his or her rights."  Oshiver, 38 F.3d at 1389.  A plaintiff bears the burden of proving fraudulent concealment.  Forbes, 228 F.3d at 486-87.  A plaintiff must show that the defendant actively mislead her, and that she exercised reasonable diligence in attempting to uncover the relevant facts.  Id.  Additionally, a plaintiff must show that she was actually "misled . . . into thinking that [she] did not have a cause of action."  Davis v. Grusemeyer, 996 F.2d 617, 624 (3d Cir. 1993).

Even assuming as true the allegations in the Amended Complaint, and construing these

allegations in the light most favorable to Plaintiff, Freddie would not be entitled to equitable tolling of the statute of limitations.  She cites no facts indicating that either PHS or MHM engaged in affirmative acts of concealment designed to mislead her regarding the cause of Eric's death.  Indeed, she herself attributes the delay in receiving the medical records to the DOC.  For example, the Amended Complaint states Freddie requested the medical records from the DOC, and that the DOC required her to supply Letters of Administration.  (See Am. Compl. ¶19.)  Additionally, the Amended Complaint alleges that Freddie attempted to and eventually did comply with the DOC requirements, not any requirements instituted by PHS or MHM.  (See Id. ¶ 20.)

The Amended Complaint is also devoid of any allegations concerning what transpired between June 30, 2006, the date Freddie completed the requirements for obtaining Letters of Administration, and August 28, 2007, the date Freddie learned that she needed to pay $841.50 before Eric's medical records would be sent to her, making it impossible for us to construe this period of delay as the fault of anyone but Freddie herself.  There are also no allegations to suggest that any delay was specifically designed to conceal the cause of death, rather than the result simply of Freddie's necessary compliance with the DOC's usual procedures.  Finally, Freddie's argument that equitable tolling should apply in this case is undermined by the fact that, even though she claims the delay in providing her the medical records constituted fraudulent concealment and that she did not know for certain that her son's death was caused by Defendants' inaction until after she received these records, Freddie commenced her lawsuit on July 30, 2007, over a month before she received the records.  Consequently, the allegations in the Amended Complaint are insufficient, even if proven to be true, to even suggest the application of equitable tolling.

When a complaint is subject to dismissal pursuant to Rule 12(b)(6), we must permit a

10

curative amendment, regardless of whether a plaintiff has sought leave to amend, unless an amendment would be inequitable or futile.  Grayson, 293 F.3d at 108.  In this case, further amendment would be futile.  This lawsuit was clearly brought outside the two-year statute of limitations.  Moreover, Plaintiff, who is represented by counsel, has already filed an Amended Complaint in response to PHS's Motion to Dismiss on the basis of the statute of limitations.  Even with knowledge that Defendants would raise this affirmative defense, Plaintiff was not able to plead facts that would arguably warrant equitable tolling here.  Finally, even in her response to the instant Motion to Dismiss, she has been unable to marshal additional facts that would support equitable tolling.  Consequently, we conclude that further amendment would be futile.

Having granted Defendants' Motions to Dismiss with regard to Plaintiff's federal claims, we decline to exercise supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3).  See Markowitz v. Northeast Land Co., 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court.")  Accordingly, Plaintiff's state law claims are dismissed without prejudice to her right to refile them in state court.

An appropriate Order follows.

11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTATE OF ERIC BATTLE, Freddie | : | CIVIL ACTION |
| Battle, Administratrix and individually | : | |
| v. | : | |
| | : | |
| PRISON HEALTH SERVICES, INC., et al. | : | NO.  07-4435 |

**O R D E R**

**AND NOW**, this 13th day of May, 2008, upon consideration of Defendants' Motion to Dismiss (Docket No. 15), and Plaintiff's response thereto, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED** as follows:

1.      Count 1 is **DISMISSED WITH PREJUDICE**.

2.      Counts 2 through 6 are **DISMISSED WITHOUT PREJUDICE** to being refiled in state court.

3.      The Clerk of Court shall mark this case **CLOSED**.

BY THE COURT:


s/ John R. Padova, J.
John R. Padova, J.